IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HILDA N. HUNTER,           )
                           )
       Petitioner,         )
                           )
v.                         )   Civil No. JFM 00-2189
                           )
LOUIS D. CROCETTI, JR. and JANET RENO,  )
                           )
       Respondents.        )
                           )
                           )

MEMORANDUM

Petitioner Hilda N. Hunter filed with this Court a Petition For Writ Of Mandamus Or, In The Alternative, Complaint For Declaratory Judgment And Injunction ("petition for mandamus"). The petition for mandamus sought an order compelling the INS to process her Form I-551. Petitioner also brought a motion for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). In a Memorandum and Order dated September 28, 2000, this Court dismissed the petition for mandamus as moot and granted the motion for attorneys' fees. Respondents have filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e). That motion will be denied.

I.

In December 1999, the INS initiated deportation proceedings against Ms. Hunter. In February 2000, the INS ordered Ms. Hunter deported in absentia. On June 20, 2000 an

1



Immigration Judge granted Ms. Hunter's motion to vacate the deportation order.[1]

Pursuant to the June 20th hearing, Ms. Hunter was told to report to an office within the INS district office in Baltimore for processing of an I-551 form. An I-551 form is used to obtain a green card, which is proof of Ms. Hunter's lawful permanent resident status. The INS officers did not process Ms. Hunter's green card application. Between June 20th and July 17th, Ms. Hunter repeatedly requested that the INS process her green card application. The INS did not respond to Ms. Hunter's requests. On July 17th, Ms. Hunter filed a petition for mandamus with this Court seeking an order compelling the INS to process her form. On August 2nd, Ms. Ragheb, INS Assistant District Counsel, called Ms. Hunter. Ms. Ragheb acknowledged receipt of the petition for mandamus and, for the first time, told Ms. Hunter the proper procedure for having her green card application processed. Ms. Hunter's I-551 form has been processed, and she has a green card as proof of her lawful permanent resident status.

II.

A motion to alter a judgment pursuant to Fed. R. Civ. P. 59(e) should be granted to correct clear errors of law or prevent manifest injustice. See Collison v. Int'l Chemical Workers Union, 34 F.3d 233, 236 (4th Cir. 1994). Petitioner filed her response to respondents' Motion to

---

[1] The Memorandum and Order on September 28, 2000, stated, "By May 2000, the Immigration and Naturalization Service realized that deportation proceedings should never have been brought against Ms. Hunter." Id. at 1. It would have been more accurate to say that: On May 17th, Ms. Hunter filed a motion to vacate the deportation order and to terminate the deportation proceedings against her. On May 18th, the INS indicated that it would not oppose her motion. On June 20th, the Immigration Judge granted her motion. See Petitioners' Mot. for Att'ys' Fees at 4. However, other than to say that Ms. Hunter was entitled to have her green card processed, none of this is relevant. The issue in this case is whether the INS was justified in withholding Ms. Hunter's green card, not whether deportation proceedings should have been brought.

Alter or Amend on October 23th. Respondents have not filed a reply, and the time in which they could file a reply has elapsed. See Local Rule 105.2(a).

The arguments and many of the facts on which respondents rely in their Motion to Alter or Amend could have been raised in their Opposition to Petitioner's Motion for Attorneys' Fees. Generally, Motions to Alter or Amend may not be used to raise new arguments. For this reason alone respondents' Motion to Alter or Amend is denied. See Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). In addition, respondents' arguments fail on the merits.

A.

Under the EAJA, the United States is liable for attorneys' fees and costs in a civil suit to a prevailing party unless the position of the United States was substantially justified or special circumstances make an award unjust. See 28 U.S.C. § 2412(d)(1)(A). Whether the government's position is substantially justified is not determined by whether the position is eventually successful, but by whether a reasonable basis for the position exists in law and fact. See, e.g., Pierce v. Underwood, 487 U.S. 552, 556 n.2 (1988); EEOC v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994).

The position at issue in this case is whether the INS was substantially justified in withholding Ms. Hunter's green card. The government argues that Ms. Hunter's green card would have been processed had she physically come to the INS to have her forms processed after June 20th. Therefore, according to the INS, it did not improperly withhold Ms. Hunter's green card. The fault in this argument is that the INS never instructed Ms. Hunter on how she was supposed to have her green card processed.

3

According to Ms. Hunter's unrebutted assertions, she was told at the hearing on June 20, 2000 that she needed to report to the first floor of Baltimore's INS district office. (See Pet. Ex. #12 (attached to original petition), Hunter Dec. ¶ 3-4.) On June 20th, Ms. Hunter reported to the first floor of Baltimore's INS district office, as she was instructed. There she was told, without elaboration, that Mr. Porter had to review her file and that she could not be processed until after the file had been reviewed. (See id. at ¶ 7.) It may well have been the case, as the INS maintains, that this was standard practice and that her file would be processed within a week. (See Res. Mot. Alt. Amend J. at 9.) However, Ms. Hunter was never informed of this. (See Pet. Ex. #12 (attached to original petition), Hunter Dec. ¶ 3-4.) She was not told how long it would take to review the file or how the INS would notify her when the file had been reviewed. (Id.)

Unsure of what to do, Ms. Hunter, through her attorney, took a reasonable course of conduct. Ms. Hunter wrote a letter by certified mail to Mr. Porter, who was reportedly reviewing her file, requesting that her file be reviewed so that her green card application could be processed. (See Pet. Ex. # 2 (attached to Mot. Att'ys' Fees), Singer Dec. at ¶ 3; Pet. Ex. #14 (attached to original petition)). The letter was copied to the INS District Director and the United States Attorney for Maryland. The government did not respond to these letters and did not inform Ms. Hunter that all she needed to do was physically return to the INS to have her forms processed. (See Pet. Opp. Ex. #2, Singer Aff. at ¶ 3.) Ms. Hunter, through her attorney, unsuccessfully attempted to reach Mr. Porter by phone. (See id. at ¶ 2.) Despite these reasonable and diligent efforts, the INS did not process her green card.

The INS's only justification for its failure to inform Ms. Hunter of the correct procedure for processing her green card is that Ms. Hunter should have known on June 20, 2000 to wait a

4

week and physically return to the INS to be processed. The INS has not provided any reason for why Ms. Hunter should have known this. The INS argues that, because Ms. Hunter could have had her green card processed if she had followed the right procedure, it did not withhold her green card. However, the onus of guessing the right procedure is not on Ms. Hunter. There is no meaningful distinction between actively withholding a green card and stating, after the fact, that the green card was available if only the alien had been able to discern the correct hidden procedure. The INS has not provided any justification for why it did not inform Ms. Hunter of the correct procedure at the hearing on June 20th, when she reported in person to the district office, or in response to her letters or phone calls. These failures to inform Ms. Hunter of the correct procedure prevented her from getting her green card processed. The INS's course of conduct with respect to Ms. Hunter's application for a green card was not substantially justified.

The government expresses concern that the September 28th Order will encourage aliens to garner fees through delay and subterfuge. This concern is misplaced. The INS could have avoided paying attorneys' fees by simply informing Ms. Hunter of the correct procedure for processing her green card. In fact, any instructive response to her repeated requests would have avoided an attorneys' fees award. This case is fundamentally different from a case where the INS adheres to a well-known policy and an alien acts unreasonably or manipulatively.

B.

The government challenges the conclusion that Ms. Hunter was a prevailing party. A party has prevailed if (1) the party has received a significant portion of the relief requested and (2) the lawsuit was a catalytic, necessary or substantial factor in obtaining the result. See Tucson Medical Center v. Sullivan, 947 F.2d 971, 982 (D.C. Cir. 1991). The government's main

contention is that this petition for mandamus could not have been the catalytic factor in processing Ms. Hunter's green card because the clerk who processed Ms. Hunter's paperwork did not know about the mandamus petition. This argument fails to consider the actuality of the situation.

Ms. Hunter filed this petition for mandamus in order to force the INS to process her green card. The government maintains that all Ms. Hunter had to do was to report to the INS district office a week after the hearing on June 20th. This may well have been the case, but the INS, despite Ms. Hunter's repeated requests, did not inform her of the proper procedure. As discussed above, the INS's failure to inform Ms. Hunter had the practical effect of withholding her green card. The immediate result of this petition for mandamus was that Ms. Ragheb[2] informed Ms. Hunter of the proper procedure for processing her green card. (See Ragheb Dec. at ¶¶ 5-9.) With this information, Ms. Hunter was finally able to follow the correct procedure for processing her green card. Whether the clerk who processed her information knew of this petition for mandamus is completely irrelevant.

An Order denying respondents' motion is attached.

Date: December 21, 2000

J. Frederick Motz
United States District Judge

---

[2] There is some suggestion in the government's papers that Ms. Ragheb's statements on August 4th have had negative implications for the government. This is not the case. Ms. Ragheb was the first INS employee who actually provided Ms. Hunter with the information needed to process her green card. If Ms. Hunter had received this information from any of the INS employees she had contact with before this petition was filed, she would not have had to file this petition. If Ms. Ragheb had not provided the information when she did, this suit would have continued, and, potentially, the attorneys' fee in this case would have been higher.